Argued July 23, decided August 6, 1912.

# DAVISON v. DAVISON.

[124 Pac. 1096.]

Husband and Wife—Conveyances and Contracts Between Husband
　　and Wife—Statutory Provisions.

1. Under Section 7035, L. O. L., which provides for actions between
husband and wife for the possession of property, as if they were not
married, Section 7036, making a conveyance between husband and wife
valid to the same extent as between other persons, Section 7044, exempting
the property and pecuniary rights of a married woman from the debts
or contracts of her husband, and giving her the entire right of disposition
therein, and Section 7049, allowing a wife to contract and incur liabilities
as if she were unmarried, and giving her generally the same rights and
liabilities as to her property as if unmarried, a transaction by which a
wife conveyed real property, accumulated by the joint efforts of herself
and her husband, to the husband upon his conveyance to her of like
property was, on its face, valid; Section 7034, which declares that when
property is owned by either husband or wife, the other has no interest
therein which can be the subject of contract between them, meaning
no more than that as to land owned by one a deed of conveyance from
the other would not add anything to the estate previously held or affect
the right of dower or curtesy.

Husband and Wife—Conveyance Between—Suit to Set Aside—Suf-
　　ficiency of Complaint—Fraud.

2. A wife's suit to set aside conveyances of her real property to her
husband, which alleges a dispute as to their property rights and an
agreement that if she would transfer certain property to him there would
be no further discord or unpleasantness, that the motive of her husband's
disagreeable treatment of her was to make her life burdensome so that
she would consent to a transfer of the property to him and his failure
to keep his agreement does not allege in sufficient terms any misrepre-
sentation or deceit practiced upon her by her husband.

Husband and Wife—Conveyance Between—Action to Set Aside—
　　Evidence.

3. Evidence, in a wife's suit to set aside her conveyances of real
property to her husband in return for his conveyance of property to her,
*held* to show that the property in dispute had been accumulated by their
joint efforts.

Husband and Wife—Conveyance Between—Suit to Set Aside—
　　Burden of Proof.

4. In a wife's suit to set aside her conveyances of her real property
to her husband, valid on their face, it was incumbent upon her to show
by preponderance of the evidence, some legal reason why the conveyances
should be set aside.

Husband and Wife—Conveyance Between—Suit to Set Aside—
　　Evidence.

5. Evidence, in a wife's suit to set aside her conveyances of her real
property to her husband in exchange for his conveyances of his real

property to her, *held* to show that her conveyances were made without any compulsion on the part of the husband or any undue influence or fraud, but as her own voluntary act, so that her suit would be dismissed.

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by Lizzie C. Davison against John B. Davison to set aside certain conveyances of real property made by the plaintiff to the defendant.

With an exordium to the effect that ever since January 10, 1895, the date of their marriage, the plaintiff and defendant have been and are now husband and wife, the complaint proceeds to state substantially that the defendant purchased for the plaintiff with her money various parcels of real estate in Multnomah County, the title to which he took in his own name and that he collected and appropriated to his own use money belonging to her and loaned on a mortgage in the sum of $1,700. The plaintiff then avers in substance that beginning about January 1, 1907, the defendant began a course of treatment which she says "was not of a physically cruel kind, but that defendant's conduct toward her may be described as mental cruelty." She says in effect that he was sulky and disagreeable; complained of the expenses of the home and found fault with her; collected her rents and other money and deposited the same in the bank in his own name. Alleging that their married life previously had been entirely free from domestic discord and an unusually happy one, she states that she demanded an explanation, in response to which defendant said that there was a great gulf between them. Then follows this allegation of the complaint:

"Finally it was agreed that if the plaintiff would make transfers of the property hereinabove described that there would be no more discord in the family of the plaintiff and the defendant, but that their future life should be a happy one. The plaintiff agreed to transfer and to settle.

upon the defendant the property herein described which she did on or about the 18th day of February, 1907. But the plaintiff alleges the facts to be that the bad treatment of the defendant towards the plaintiff commencing in January, was done for the purpose of torturing the plaintiff, making her life burdensome so that she would consent to make the transfers and settlement which she did. That, in truth and in fact, the only reason why the defendant instituted the cruel conduct which he did towards the plaintiff was to gain control and possession of the property herein described and that he was guided and governed by no other motive whatever."

She further charges that soon after the transfer of the property was made by the plaintiff to the defendant, he left Oregon, telling her that it was his intention to . visit his old home in Missouri, but that he went to South Dakota in order that he might acquire a fraudulent residence there and bring a suit against the plaintiff for divorce. The peroration of the bill is:

"That the plaintiff has been at all times a good and dutiful wife to the defendant, but the defendant's conduct in gaining the control and title to the property herein this complaint described was so that he could deprive the plaintiff of what she had honestly earned by hard labor, that he might live off the proceeds of this property, and that he might desert her and make charges against her which were false."

The prayer is to the effect that the conveyances and settlement be set aside as to the three tracts of property described; that an accounting be had as to the money collected by the defendant for the plaintiff, and for general relief.

The answer admits the marriage and the settlement agreement alleged in the complaint and attached as an exhibit "B" thereto, but denies every other allegation of the complaint. The answer then alleges in great detail how the plaintiff and defendant, when they were married, agreed that as to monetary matters they should

be equal partners, especially in a small millinery business, in which she was then engaged; that they both contributed of their earnings to the business and while she had active management of the same till 1902 the defendant aided in carrying it on at such times as he could be spared from other employment. Finally, in the year last mentioned, he abandoned all other engagements and contributed his entire time and attention to their joint ventures, including the millinery trade, until by February 19, 1907, by their joint efforts, earnings and savings, both inside and outside of the store, the plaintiff and defendant had accumulated personal and real property of the fair cash value of about $50,000, which was owned by them in common, each having an equal interest therein without regard to whether plaintiff or defendant held the legal title. In the answer appears this allegation:

"That a long time prior to February, 1907, plaintiff and defendant talked about a separation and living apart, and thereafter, but some time prior to February, 1907, plaintiff proposed to defendant that their said property be divided between them so that each should have and receive his and her share separately and hold the same in their respective names and in severalty; that she desired to make a will devising her property to her niece and preferred to have her share of the partnership property segregated and set apart from defendant's interest therein; that defendant, at plaintiff's request, agreed to such a division and segregation, and plaintiff thereupon and without any persuasion or influence or duress whatever on the part of defendant, but solely upon her own initiative and in the exercise of her own free will, choice and desire, and without any false or fraudulent statements or representations whatever by defendant, made selections of such portions of the above described property as she considered would represent her half interest in the whole of said property; that she had the first choice and defendant consented to her selections."

The designations of property made by each are then described in detail and it is alleged that the parties exchanged conveyances for such lands chosen by each as stood in the name of the other and adjusted their personal property so that, according to the defendant's construction of the affair, the plaintiff received in the division $30,100 as against property of the value of only $23,050 accruing to the ·defendant.

A plea of estoppel, which is not deemed necessary to consider for the purposes of this opinion, was also interposed by the answer, to the effect that plaintiff should be forbidden to deny the transaction on account of her subsequent conduct with reference thereto.

A still further defense by way of counterclaim alleges in substance that the defendant is now and for a long time hitherto has been in possession of the real property which the plaintiff describes in her complaint, and other property, and that plaintiff claims some estate or interest therein adverse to defendant without any right whatever. He concluded with the prayer in substance that his title be quieted in the property in question; that her complaint be dismissed and for such further relief as should be equitable.

The reply traversed the answer in almost every material particular. A trial before the court resulted in findings of fact and conclusions of law in favor of the defendant and a decree dismissing the suit with costs and disbursements against the plaintiff. She appeals.

AFFIRMED.

For appellant there was a brief over the names of Messrs. *Emmons & Webster,* Mr. *Henry E. McGinn,* Mr. *R. Citron,* and *Mr. W. J. Makelim,* with oral arguments by Mr. *Lionel R. Webster* and Mr. *Citron.*

For respondent there was a brief over the names of Mr. *John VanZante, Messrs. Beech & Simon,* and *Messrs.*

Sig. 15

*Bauer & Greene,* with an oral argument by *Mr. Thomas G. Greene.*

Mr. Justice Burnett delivered the opinion of the court.

1. The following sections of our code will serve to differentiate this case from many of the precedents cited from other states:

Section 7034. "When property is owned by either husband or wife, the other has no interest therein which can be the subject of contract between them, or such interest as will make the same liable for the contracts or liabilities of either the husband or wife who is not the owner of the property, except as provided in this act."

Section 7035. "Should either the husband or wife obtain possession or control of property belonging to the other either before or after marriage, the owner of the property may maintain an action therefor, or for any right growing out of the same, in the same manner and extent as if they were unmarried."

Section 7036. "A conveyance, transfer, or lien executed by either husband or wife to or in favor of the other shall be valid to the same extent as between other persons."

Section 7044. "The property and pecuniary rights of every married woman at the time of her marriage or afterwards acquired shall not be subject to the debts or contracts of her husband, and she may manage, sell, convey, or devise the same by will to the same extent and in the same manner that her husband can, property belonging to him."

Section 7049. "Contracts may be made by a wife, and liabilities incurred, and the same enforced by or against her to the same extent and in the same manner as if she were unmarried."

Section 7050. "All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband are hereby repealed; *provided,* that this act shall not confer the right to vote or hold office upon the wife, except as is other-

wise provided by law; and for any unjust usurpation of her property or natural rights she shall have the same right to appeal in her own name alone to the courts of law or equity for redress that the husband has."

In *Grubbe* v. *Grubbe*, 26 Or. 363 (38 Pac. 182), this court decided that under the general grant of power given in Section 7049, L. O. L., the wife is authorized to enter into parol contracts with her husband and by Section 7036 she has been granted a special power to enter into contracts under seal with him. These sections confer upon each spouse contractual independence so that each may enter into agreements with the other like they would with strangers.

It is admitted that the plaintiff here conveyed the real property to her husband and he conveyed like property to her, the title to which had previously stood in the name of the grantor in each case. The law plainly authorizes such transactions between husband and wife. It is contended as a matter of law that the conveyances were void under Section 7034. True enough, it is said there that "when property is owned by either husband or wife the other has no interest therein which can be the subject of contract between them." This means nothing more than that if for instance the wife has acquired real property in her own name from any source, a deed from her husband to her for the same property would not add anything to her estate or change the result of curtesy in him if she should die first seized of the land in question. On the other hand, a deed from her to him of land already in his ownership in fee simple would not add anything to his estate or bar her possibility of dower. By the execution of the deeds mentioned and exchanged between the parties, each conveyed to the other the title of land which stood in the name of the grantor, and this is manifestly within the sanction of Section 7036, L. O. L. These conveyances are thus at least valid upon their face.

2. If they are to be set aside it must be by virtue of some recognized power of a court of equity. The complaint does not allege in sufficient terms any misrepresentation or deceit practiced by the defendant against the plaintiff. Neither does it aver any compulsion overpowering her will or compelling her in any degree to make the conveyances she now seeks to set aside. In its ultimate analysis the complaint is no more than a statement, in effect, that the defendant was sulky and disagreeable, acting much like a spoiled child, and that with hope of conciliating him and inducing him to act with more pleasant propriety she made him a present of the property in question. According to her story she was not successful in her endeavors and his subsequent conduct did not meet her expectation. As we view the testimony neither party has much to be proud of in behavior towards the other for some time prior to the transaction in question. Connubial bliss, however, is not to be estimated at a price of so much per ton, or yard, or acre, neither is it to be purchased as the caresses of a courtesan. It cannot be made the subject of barter between the two spouses and so far as that is concerned, if she of her own free will and accord, although with the hope of inducing a different course of conduct toward her on the part of defendant, freely gave him her property it must stand as the court finds it. We cannot relieve her from the consequences of her own deliberate acts and deeds.

3. The testimony shows that when they began their married life she was a milliner in a small way, and he a policeman; that they agreed not to keep house but to live in rooms and board and each was to contribute their earnings to a common fund. She managed the millinery business herself until 1902, although he gave to it as much of his time and funds as he could. She does not question but what he put all his earnings into the common purse. In the beginning he had somewhat more money than she

had. From 1902 until the close of the business relations
between the parties and the settlement evidenced by the
agreement attached to plaintiff's complaint, the defendant
gave his entire time and attention to the business, not
only of the millinery store but also to matters outside that
concern in the way of investing in real property, building
upon the same, managing it and generally supervising the
whole financial affairs of the parties. She took no active
part whatever in anything except the milinery business.
She told different parties that her husband was as much
interested in the store and their other affairs as she was.
In short, a careful study of the record convinces us that
the preponderance of the testimony is in favor of the
proposition that the accumulations mentioned in the plead-
ings were produced by the joint efforts of both parties.
They kept no books showing the amount of money each
invested or the reasonable value of the services which
each rendered. It cannot be said reasonably that the
labors of either party for the space of twelve years in
accumulating property were to be held for naught or
were intended as a gratuity for the other. If the parties
themselves had not settled their monetary affairs it would
be exceedingly difficult, if not impossible, for tribunal to
adjust them with financial exactness. The case was one
ripe for settlement between them with due regard to each
others rights.

4. Having then executed the conveyances to her hus-
band, it is incumbent upon the plaintiff on the issues
tendered to show by a preponderance of the evidence some
legal reason why they should be set aside.

5. In the testimony, she is practically alone as a wit-
ness. She is disputed on all points by the defendant, and
as to the plaintiff's satisfaction with the settlement he
is supported by numbers of witnesses with whom she
talked after it was accomplished and after defendant had
departed from the state, and these witnesses she does not

materially contradict. The defendant testified that the proposal for a division of the property came first from the plaintiff and that he objected at first, but finally she said one day "if you don't make that division I'll find a way to make you make it." She does not challenge this statement in any way. Whether or not the property accumulated was the product of her own exclusive earning, the plaintiff had the legal right to convey it to her husband in whole or in part. The great weight of the testimony, in our judgment, shows that she did this without any fear or compulsion on the part of her husband or any undue influence or fraud whatever, but as her own voluntary act and deed. As such it must stand as against anything she has shown in this suit. In reaching this conclusion we have not deemed it necessary or material for any purpose in this case to consider either the alleged divorce proceedings in South Dakota or the defendant's plea in estoppel.

The decree of the court below is affirmed.

AFFIRMED.